UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIMITAR PETLECHKOV,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX CORPORATION, et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>1:22-CV-4555-JPB |

### **ORDER**

This case is before the Court on a frivolity determination pursuant to 28 U.S.C. § 1915(e)(2). The Court finds as follows:

### **BACKGROUND**

Dimitar Petlechkov ("Plaintiff"), proceeding *pro se*, brings this action against FedEx Corporation; Federal Express Corporation ("FedEx Express"); FedEx Corporate Services, Inc. ("FedEx Services"); Thomas W. Murrey, Jr.; Andrew C. Newbon; and Olivia H. Waites (collectively, "Defendants").[1] [Doc. 3]. In the Complaint, Plaintiff alleges that Defendants violated Georgia's Racketeer Influenced and Corrupt Organization ("RICO") statute, O.C.G.A. §§ 16-14-1 *et*

---

[1] On November 15, 2022, Plaintiff filed an application for leave to proceed in forma pauperis in this Court, [Doc. 1], and on November 18, 2022, the Magistrate Judge granted Plaintiff's application, [Doc. 2].

*seq.* Id. at 1.  According to the Complaint, FedEx Corporation is the parent and holding company for FedEx Express and FedEx Services.  Id.  Murrey is a litigation attorney for FedEx Express, and Newbon and Waites are employees of FedEx Services.  Id. at 2, 3.

The events forming the basis of the Complaint occurred between January 2009 and early 2022.  In January 2009, Plaintiff misrepresented to FedEx that he was a vendor for General Dynamics, a prominent FedEx customer.  Id. at 2.  As a result of this misrepresentation, Plaintiff received a discounted rate on his FedEx account for over five years.  Id.  During this time, Plaintiff resold FedEx services to third parties at a markup.  Id.

Between March and April 2014, Newbon discovered that Plaintiff was not entitled to the discount, closed Plaintiff's account and initiated an internal investigation.  Id.  That investigation concluded in November 2014 with the recommendation that FedEx file a civil suit against Plaintiff to recover losses or pursue criminal charges.  Id.  At some point between December 2014 and June 2015, Murrey contacted the U.S. Attorney's Office, which declined to bring charges against Plaintiff at that time.  Id. at 3.  In July 2015, Murrey filed a civil suit against Plaintiff on behalf of FedEx Express in the Northern District of Georgia.  Id.

Plaintiff deposed Waites on September 16, 2016, as part of the discovery process in the civil suit. Id. During that deposition, Waites testified that FedEx policy did not authorize extending discounts to vendors of national accounts such as General Dynamics. Id. Plaintiff alleges that this testimony was false; that Waites knew that the testimony was false; and that Murrey deliberately encouraged Waites to testify falsely to further FedEx's chances of prevailing over Plaintiff. Id. at 4. Plaintiff also asserts that he relied on this allegedly false testimony to conclude that misrepresenting his status as a General Dynamics vendor was not material in FedEx's decision to provide a discount. Id. More specifically, Plaintiff claims that because vendors were not eligible to receive discounted pricing in the first instance, his "misrepresentation simply could not be material." Id. Plaintiff further concluded that because materiality is an element in both civil and criminal fraud, he could not face liability for his misrepresentation in either a civil or criminal case. Id.

Plaintiff himself was deposed on September 20, 2016. Id. at 5. During his deposition, Plaintiff testified "openly, honestly, and without limitations" about misrepresenting his status as a vendor in 2009. Id. Plaintiff alleges that he relied on the legal conclusions he drew from Waites's deposition testimony when he decided to testify at his own deposition, as well as when he turned down settlement

offers from FedEx Express ranging from $95,000 to $150,000 between September and December 2016.  Id.

On January 27, 2017, Plaintiff deposed Newbon, who, like Waites, testified that vendors to General Dynamics were not eligible for discounts.  Id. at 6. Plaintiff alleges that Murrey also directed Newbon to testify falsely "to keep his testimony consistent" with Waites's earlier testimony.  Id.  Neither Waites nor Newbon ever filed an errata sheet or other document indicating that these statements were false.  Id. at 5, 6.

Plaintiff alleges that Murrey returned to the U.S. Attorney's Office in February 2017, this time "armed" with Plaintiff's September 2016 deposition.  Id. at 6.  Plaintiff was indicted on criminal charges in November 2017.  Id.  Again relying on the legal conclusions he formed from Waites's testimony, Plaintiff decided not to pursue any plea offers with the U.S. Attorney's Office.  Id.  Instead, Plaintiff proceeded to trial.  Id. at 7.

On April 3, 2018, Newbon testified at Plaintiff's trial that General Dynamics vendors *could* receive discounts under FedEx's standard operating procedure.  Id. Plaintiff was found guilty by a jury.  Id.  According to Plaintiff, Murrey testified at Plaintiff's sentencing that FedEx policy permitted vendors to receive discounts

belonging to national accounts such as General Dynamics.  Id.  A court of appeals affirmed Plaintiff's conviction twice.  Id.

In the Complaint, Plaintiff alleges that Defendants' actions amount to a RICO violation.  More specifically, Plaintiff claims that Defendants "conspired and collaborated to procure [P]laintiff's confession and then conviction by misleading and tricking him through the commission of two acts of perjury and two acts of subornation of perjury."  Id.  Plaintiff asserts that Defendants worked toward the "common goal" of "obtain[ing] pecuniary gain and inflict[ing] economic injury" on him.  Id.  Plaintiff seeks damages as a result.

## ANALYSIS

**A.    Legal Standard**

Because Plaintiff filed this action in forma pauperis, the Court must review the Complaint under 28 U.S.C. § 1915(e)(2).  This statute requires the Court to dismiss a case if the action is frivolous, fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2). Section 1915(e)(2) aims to "discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because

of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

"Failure to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard as dismissal for failure to state a claim under [Federal Rule of Civil Procedure] 12(b)(6)." Wilkerson v. H&S, Inc., 366 F. App'x 49, 51 (11th Cir. 2010). As a threshold matter, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim to relief, however, when it does not include enough factual matter to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). As such, a complaint must "'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282–83 (11th Cir. 2007) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)). Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see also Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) ("[C]onclusory allegations,

unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.").

Finally, because Plaintiff is *pro se*, this Court has an obligation to construe his pleadings liberally. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). "This leniency, however, does not require or allow courts to rewrite an otherwise deficient pleading in order to sustain an action." Thomas v. Pentagon Fed. Credit Union, 393 F. App'x 635, 637 (11th Cir. 2010). *Pro se* litigants must follow the Federal Rules of Civil Procedure, Rodriguez v. Scott, 775 F. App'x 599, 602 (11th Cir. 2019), including Rule 8's requirement that any complaint contain a short and plain statement of the claim to relief, Fed. R. Civ. P. 8(a)(2).

**B.    RICO Claim**

Plaintiff's sole claim is that Defendants violated the Georgia RICO statute by conspiring to procure his confession during the civil proceedings and to secure his subsequent criminal conviction. O.C.G.A. § 16-14-4(b) makes it unlawful for "any person employed by or associated with an enterprise to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." In turn, a "pattern of racketeering activity" is defined as "'engaging in at least two predicate acts of racketeering activity.'" Duvall v. Cronic, 820 S.E.2d 780, 789 (Ga. Ct. App. 2018) (quoting Ali v. State, 761 S.E.2d 601, 604 (Ga. Ct. App.

2014)). These "predicate acts" are set forth in the Georgia RICO statute. See O.C.G.A. § 16-14-3(5)(A).

To state a RICO claim under Georgia law, a plaintiff must show (1) "that the defendants violated or conspired to violate the RICO statute;" (2) "that as a result of this conduct the plaintiff has suffered injury;" and (3) "that the defendant[s'] violation of or conspiracy to violate the RICO statute was the proximate cause of the injury." Wylie v. Denton, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013). Below, the Court analyzes the first element before addressing the second and third elements together.

### 1. Predicate Acts of Racketeering Activity

To establish the first element of a RICO claim, "the plaintiff must demonstrate that the statute has been violated, including that the defendant engaged in at least two predicate acts of racketeering activity." Vernon v. Assurance Forensic Acct., LLC, 774 S.E.2d 197, 210 (Ga. Ct. App. 2015). As relevant here, "predicate acts of racketeering activity" include perjury and related crimes, see O.C.G.A. § 16-14-3(5)(A)(xxv), as well as influencing witnesses, id. § 16-14-3(5)(A)(xxvii).

Plaintiff alleges that at least two of the named defendants (Waites and Newbon) committed perjury in their depositions during Plaintiff's civil case.

8

Plaintiff also asserts that Murrey deliberately and knowingly influenced their false testimony. Plaintiff expressly contends that these actions constitute predicate acts of racketeering activity under O.C.G.A. § 16-14-3(5)(A). Given the Court's duty to construe Plaintiff's pleadings liberally and accept well-pleaded facts as true, the Court finds that Plaintiff has sufficiently alleged that Defendants committed two or more predicate acts that would constitute a pattern of racketeering activity. As such, Plaintiff's allegations establish the first element of a RICO claim.

### 2.     Injury and Proximate Cause

Because the final two elements of a RICO claim—injury and proximate cause—are related, the Court addresses them together. A plaintiff bringing a RICO claim under Georgia law must "'show an injury by a pattern of racketeering activity.'" Dixon v. Branch Banking & Tr. Co., 824 S.E.2d 760, 766 (Ga. Ct. App. 2019) (quoting Brown v. Freedman, 474 S.E.2d 73, 77 (Ga. Ct. App. 1996)). Importantly, a plaintiff must show that this injury "was the direct result of a predicate act targeted toward [him], such that [he] was the intended victim." Wylie, 746 S.E.2d at 694; see also Nicholson v. Windham, 571 S.E.2d 466, 468 (Ga. Ct. App. 2002) (holding that a RICO plaintiff "must show a direct nexus between at least one of the predicate acts . . . and the injury [he] purportedly sustained"). The standard for establishing causation is high: "When a court

9

evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." Pollman v. Swan, 723 S.E.2d 290, 292 (Ga. Ct. App. 2011) (quoting Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461 (2006)).  In sum, "a plaintiff asserting a RICO claim must allege more than that an act of racketeering occurred and that [he] was injured." Wylie, 746 S.E.2d at 694.

      Plaintiff claims that Waites's and Newbon's allegedly false deposition testimony led him to provide incriminating testimony in his civil case, decline settlement offers in that suit and choose not to engage in plea negotiations during his criminal proceedings, all of which, according to Plaintiff, resulted in substantial injury.  However, even accepting these allegations as true and construing them liberally, Plaintiff's claimed injuries (litigation expenses, a higher restitution award and the harms associated with his criminal conviction) flow not only from the alleged perjury, but also from Plaintiff's own deposition testimony and his personal decision about whether to plea during his criminal proceedings.  Although the purported perjury may have played some role in those decisions, Plaintiff's injuries are the "direct result" of the disposition of his civil case and of his criminal conviction, id., and did not occur "by reason of" the perjury itself, Nicholson, 571

10

S.E.2d at 467. These facts break the chain of causation and thus defeat the necessary showing of proximate cause for a RICO claim.

Ultimately, Plaintiff's injuries may be a potentially foreseeable outcome of Defendants' alleged actions, but the Complaint fails to show that they are the direct result of those acts. See Najarian Cap., LLC v. Clark, 849 S.E.2d 262, 270 (Ga. Ct. App. 2020) (holding that a RICO claimant does not meet his burden by showing "'merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act'" (quoting Wylie, 746 S.E.2d at 694)). Thus, because Plaintiff cannot establish the element of proximate cause, the Complaint is due to be dismissed. The Court will, however, grant Plaintiff leave to amend.

**C.     Opportunity to Amend**

Courts are generally required to afford a *pro se* plaintiff an opportunity to amend a pleading "where a more carefully drafted complaint might state a claim." Woodroffe v. Fla. Dep't of Fin. Servs., 774 F. App'x 553, 554 (11th Cir. 2019); see also Watkins v. Hudson, 560 F. App'x 908, 911 (11th Cir. 2014) ("A court must . . . afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless the plaintiff expresses a desire not to amend or an amendment would be futile."). The Court is skeptical that the facts presented in

11

the Complaint can state a claim to relief under the Georgia RICO statute, particularly as to the element of proximate cause. Nevertheless, before dismissing this case with prejudice and because Plaintiff has not given any indication that he does not wish to amend his Complaint, the Court will grant Plaintiff leave to amend.

At a minimum, Plaintiff's amended complaint must comply with the following instructions:

1) The amended complaint must contain a background section stating the facts relevant to all claims. The facts shall be presented in individually numbered paragraphs and presented in a logical order (which may or may not be chronological). The facts section should not contain facts that are not relevant to the claims.

2) Plaintiff must allege each cause of action, clearly identified as such, under a separate count. Underneath each count, in separately numbered paragraphs, Plaintiff must provide the relevant facts, including dates, that he believes entitle him to relief. In other words, Plaintiff should allege factual support for every cause of action asserted and, more specifically, for each element of the cause of action. This factual support must include the manner in which Defendants' alleged conduct is related to each cause of action.

3) Plaintiff must explicitly request the relief he seeks and must provide an explanation of why he is entitled to such relief.

Plaintiff is notified that the amended complaint will supersede all previous pleadings. The Court will not read the pleadings in tandem. In short, Plaintiff must ensure that his amendment complies with Federal Rule of Civil Procedure 8 and the directives of this Order.

## CONCLUSION

Pursuant to the instructions above, Plaintiff shall amend the Complaint to adequately plead a specific claim or claims within fourteen days of the date of this Order. The clerk is **DIRECTED** to resubmit this matter at the expiration of the fourteen days. Plaintiff is notified that failure to submit an amended complaint within the fourteen-day time period will result in dismissal of the entire action. Because this action appears frivolous, the pending motions in this case [Doc. 5] [Doc. 6] are **DENIED**.

**SO ORDERED** this 7th day of April, 2023.

J. P. BOULEE
United States District Judge